MILLER v. HALL.

1. A finding of fact by one of two referees concurred in by the Circuit judge, affirmed.
2. A bond executed January 1st, 1873, conditioned for the payment "of $1,195 in five equal annual installments, with interest payable annually from date upon the whole amount unpaid and at the rate of ten per centum per annum, the first installment payable January 1st, 1874, being $239, besides interest, and the last installment of like amount on January 1st, 1878, and the same amount with all interest due, payable on the first day of January of each intervening year," bears annual interest at the rate of ten per cent. a year after maturity of the last installment as well as before.

---

Before KERSHAW, J., Abbeville, February, 1881.

Hon. Thomas B. Fraser, judge of the Third Circuit, sat in the place of Mr. Justice McGowan, who had been of counsel in the cause.

It was an action by Jacob Miller against Wiley Hall, commenced in March, 1879, for a specific performance of the bond recited in the opinion of this court, or for a sale of the land. The covenant referred to in the opinion was as follows:

Agreement and covenant this day entered into between Jacob Miller and Wiley Hall, both of the county and State aforesaid.

*First.* Jacob Miller agrees to sell to said Wiley Hall two hun-- dred and thirty-nine acres of land according to metes and bounds-- of a plat thereof made by Jas. A. McCord, Esq., deputy sur- veyor, which, when finished, is to be attached to this agreement ;-- at and for the price of five dollars per acre, making in the aggre- gate the sum of one thousand one hundred and ninety-five ($1,195) dollars, for which sum the said Wiley Hall has this day executed to the said Miller a penal bond, payable in five annual equal installments with interest from date at ten per centum and payable annually. The said Jacob Miller to retain the title to the said land until the whole of the said bond for the purchase money and interest thereon is paid in full. Then good titles to be made to the said tract of land.

*Second.* Wiley Hall agrees to pay five dollars per acre for the said tract of land, making the sum of one thousand one hundred and ninety-five ($1,195) dollars, for which he has this day exe- cuted a bond with interest at ten per centum payable annually, the said bond payable in five equal annual installments. The said Wiley Hall agrees to enter upon the said premises without titles and after payment of the said bond in full, then, and not till then, to receive titles to the said tract of land.

Witness our hands and seals this the first day of Jan., 1873.

The cause was referred to O. T. Calhoun and M. P. De Bruhl, Esqs., as referees. Referee Calhoun reported in favor of a credit of $60 claimed by defendant to have been paid January 1st, 1874, and that the bond bore simple interest at seven per cent. after maturity, and found the balance due by defendant to plain- tiff on September 1st, 1879, to be $555.94. Referee De Bruhl found the balance on the same day to be $666.81, he having dis- allowed the alleged credit of $60, and having calculated interest after the maturity of the bond at ten per cent., payable annually. The cause came up for a hearing on exceptions to this report, and the Circuit judge filed the following decree :

This case was heard upon the reports of two referees, who differed in opinion and made separate reports, to both of which exceptions were filed. The referees do not differ in their find- ings of fact, except in the item of the credit for $60 claimed by the defendant. It appears to me that the weight of the evidence is against this credit, and as to that I concur with Mr. De Bruhl in rejecting it.

The main question in the case is as to the mode of calculating

the interest. The principle of construction on this question is explained in *Langston* v. *South Carolina Railroad Company*, 2 *S. C.* 248. The legal rate applies unless displaced by the positive terms of the contract, and yields only so far as it is thus. excluded. The interest was to be " at the rate of ten per centum per annum, to be payable annually, from date, upon the whole. amount unpaid, the first installment ($239), besides interest, payable on January 1st, 1874, and the last installment of like. amount, on January 1st, 1878, and the same amount, with all interest due, payable on the first day of January of each intervening year." This statement of the bond presents the two questions made upon its construction, first as to how far the rate of ten per cent. is to be applied to it; and next, whether annual interest is to be allowed after the maturity of the bond.

1. I consider that the rate of ten per cent. was established by the contract, not only for the detention of the principal sums. due, but also for the detention of the interest when not paid each year. The rate applied to the " whole amount unpaid," and those words require this construction.

2. So also do they qualify the requirement in regard to payment of the interest annually. The interest was to be " payable. annually, from date, upon the whole amount unpaid." This. construction is supported by the decision of the Court of Errors. in *Wright* v. *Eaves*, 10 *Rich. Eq.* 584, and would be in accordance with that case even without the words in the bond, " upon the whole amount unpaid," which seem to me to be conclusive, and to require that the interest be calculated with annual rests. upon the whole amount unpaid, after, as well as before, the last payment became due. The bond in *Wright* v. *Eaves* was without those words, but in other respects very like this, and the. Court of Errors decided that the interest was payable annually after, as well as before, maturity, thereby reversing the Circuit decree to that extent.

The report of Mr. De Bruhl does not contain a statement of his calculation of the interest, whereby its accuracy might be tested and his mode of calculating the same exemplified, and a. further reference will be necessary. It is ordered and adjudged, that the reports herein be so modified as to conform to the prin-.

ciples of this decree, and that the exceptions which accord therewith be sustained, and the other exceptions be overruled. That it be referred to the master to ascertain and report the amount due upon the bond aforesaid, in accordance with the said reports, as modified by this decree.

Defendant appealed on the following exceptions:

1. Because his Honor erred in overruling defendant's exceptions to the report of M. P. De Bruhl, Esq., one of the referees.

2. Because his Honor erred in overruling defendant's exceptions to the report of O. T. Calhoun, Esq., the other referee.

3. Because his Honor erred in sustaining plaintiff's exceptions to the said report of O. T. Calhoun, Esq.

4. Because there is a patent ambiguity upon the face of the two bonds, and his Honor erred in not giving them that construction which is most agreeable to the rules of law, instead of the contrary.

5. Because his Honor erred in allowing interest at the rate of ten per centum per annum on the bond in suit from its date to the date of the referee's report, and also in allowing compound interest on the said bond at the rate aforesaid, instead of computing annual interest from the date of said bond upon each installment thereof, until it became payable, at the rate of ten per centum per annum, and simple interest upon each installment thereof after it became payable, and upon each installment of interest that was payable annually, according to the terms of said bond, at the rate of seven per centum per annum.

6. Because his Honor erred in making the report of M. P. De Bruhl, Esq., the judgment of the Court.

7. Because the said judgment is contrary to the law of the case and the evidence adduced therein.

*Messrs. Burt & Graydon,* for appellant.

*Mr. W. H. Parker,* contra.

October 21st, 1882. The opinion of the court was delivered by

MR. JUSTICE FRASER. On January 1st, 1873, the appellant executed his bond to the respondent, the condition of which was

the payment "of one thousand one hundred and ninety-five dollars ($1,195) in five equal annual installments, with interest payable annually from date upon the whole amount unpaid, and at the rate of ten per centum per annum. The first installment payable on the first day of January, one thousand eight hundred and seventy-four, being two hundred and thirty-nine dollars ($239), besides interest, and the last installment of like amount on the first day of January, one thousand eight hundred and seventy-eight, and the same amount, with all interest due, payable on the first day of January of each intervening year." On the same day and year the said parties entered into a written agreement, under seal, that the respondent would convey to the appellant a certain tract of land upon the payment of the above described bond, which appellant thereby again covenants to pay.

After various payments were made a dispute arose as to some alleged payments and as to the mode of calculating interest on the bond, and this action was brought for specific performance or sale of the land. The burden of proof as to the alleged payments was certainly on the appellant, and this court concurs with the Circuit judge that the weight of evidence is against the credit claimed for sixty dollars, and that it was properly disallowed.

The only other question presented to this court by the appeal is as to the mode of calculating interest, and it is conceded that this must be governed by the contract between the parties.

In the case of *Mobley* v. *Davega*, 16 *S. C.* 73, there was a note "with interest from date at twelve and a half per cent. per annum, interest payable annually," and the mortgage contained the further words, "till paid," and the court held that interest was payable annually as well after as before maturity. The words here are "interest payable annually from date upon the *whole amount unpaid*, at the rate of *ten* per centum per annum." The words "till paid," it is held, will carry the interest agreed on beyond the period of maturity of the payments. The words "whole amount unpaid" cannot certainly refer to amounts not paid before maturity, because the rate as to this is fixed by the other words in the bond, and the word "unpaid" is more properly

K

applicable to the amounts not paid when due, and which the obligor was then bound to pay, and which he had no right to pay before.

It does not appear to this court that there is any good reason for applying the term "unpaid" as used in this bond to any portion of the principal or interest, which, if tendered, the obligee had a right to refuse. The words must have some meaning, and their clear import is that any amounts not paid when due according to the condition of the bond, continues to bear interest at the rate of ten per centum per annum, payable annually, until the bond is paid up. This is the contract of the parties.

The court therefore concurs with the Circuit judge as to the mode of calculating interest on the bond. The reports of the two referees have been recommitted by the Circuit judge to the master "to ascertain and report the amount due upon the bond aforesaid in accordance with said reports as modified" by the Circuit decree, and upon the coming in of the master's report a final decree can be made on the Circuit.

It is therefore ordered and adjudged that the exceptions be overruled, the judgment of the Circuit Court affirmed, and the appeal dismissed.

MR. JUSTICE McIVER concurred.

MR. CHIEF JUSTICE SIMPSON, *dissenting*. Where annual interest is agreed to be paid on money foreborne, the general rule is that it stops at the maturity of the principal sum. It is not illegal, however, for a party to contract to pay annual interest after the maturity of the principal sum, as well as before, so that in every case, where the question arises whether annual interest should be computed after the maturity of the principal sum, it must be decided upon the construction of the contract. The true meaning and intent of the parties as derived from the terms of the instrument must be inquired into, and, when ascertained, will govern. See appendix to *Johnstone's Digest*, where the cases on this subject are collected and analyzed.

It has been decided that where a certain sum has been promised at twelve months, or any shorter period after date, with

interest, payable annually, that this is a contract to pay the interest annually, after the maturity as well as before. This is inferred from the word "annually," as there could be no other purpose in using this word, but to convey the idea that the interest was to be paid at the end of each year, till the debt was paid. *Singleton* v. *Lewis*, 2 *Hill* 408; *O'Neall* v. *Bookman*, 9 *Rich.* 80.

It has also been decided, that where a principal sum is promised at two or more years after date, with interest from date, payable annually, that the obligation of the debtor to pay annual interest stops at the maturity of the debt, because the term "annually" is satisfied by such a construction, the promise of the debtor being to pay the principal sum at the end of the two or more years, with the interest of each intervening year as it accrues, which, not being paid, would bear interest as these amounts fell due, respectively, as if a note had been given for these unpaid annual interests at the end of each intervening year. *Gibbes* v. *Chisolm*, 2 *N. & McC.* 38; *O'Neall* v. *Sims*, 1 *Strobh.* 115; *DeBruhl* v. *Neuffer*, *Id.* 426.

But where the promise is to pay a principal sum at the end of two or more years, with interest payable annually "till the whole debt is paid," these words, or any of similar import, would require the party to pay annual interest after the maturity as well as before, because such is the plain meaning of the contract, the promise of its terms being to pay the debt at a fixed time and also annual interest on it, not as in the former case up to that time, but continually until the whole debt is paid. Thus, as has already been said, each contract depends upon its own terms, the question in every case being what was the understanding of the parties as expressed in the instrument under consideration.

Now apply these principles to the case before the court. Here the appellant gives bond that he would pay the respondent $1,195, in five equal annual installments from date, with annual interest on this sum. Suppose that the bond had stopped at this point, could the instrument be construed otherwise than that the appellant promised to pay the principal debt within five years, and also the annual interest that might accrue thereon

within that time? Could it be said that he had promised to pay annual interest after the five years? I think not, because the bond, as to all of the installments, would mature at the end of the five years, and while there is a promise to pay the interest on each installment at the end of each intervening year, there is nothing which shows that he was to pay the annual interest after the five years.

The bond in question, however, does not stop at this point; it provides further, " that the interest is to be paid annually on the whole amount unpaid," and the majority of the court has reached the conclusion that this term " unpaid " has the same effect as if the term " till paid " had been employed. It is conceded that if these latter terms had been used, this would carry the annual interest to the ultimate payment of the whole debt, because such would have been the distinct promise of the debtor. But, as I understand the case, the term " unpaid " was not used by the parties here synonymously with " till paid." Look at the bond. Its evident purpose was to bind the appellant to pay the respondent $1,195, the price of a certain tract of land. The appellant was to have five years to pay this sum as a whole, to be paid, however, in installments of one-fifth annually, the whole amount to be realized in five years, at the end of which time the ultimate maturity of the bond as a whole was to take place.

Now it was uncertain whether each installment would be met at the period of its special maturity. It was not known but what some of them, though falling due within the five years, might remain unpaid up to that time, and no doubt the term " unpaid " was employed to denote that if any of these installments were unpaid as they fell due, they should still carry annual interest up to the ultimate maturity of the bond as a whole, and not beyond the five years as held by the majority, the term " unpaid " having reference to the different installments, but within the five years. And this is the more reasonable when it is remembered that it is by no means certain, if this term had not been used, that the annual interest could have been carried beyond the maturity of each installment.

There is some doubt whether, in the absence of this term, the

bond might not have been construed as containing five different obligations, falling due at one, two, three, four and five years, with annual interest on each, consecutively, in which case, under our decisions, the first bond being due at one year, with interest payable annually, this term, by its own force, would carry the annual interest until the installment was paid. The other four installments, however, falling due at longer dates than one year, would be governed by the other decisions, which hold that the annual interest stops as the debts become due. The term "unpaid" prevents this as to all of the installments and requires the annual interest to run on upon each, though not paid when due—not indefinitely, however, but until the expiration of the five years, when the whole bond was expected to be satisfied. The limit of the contract, as a whole, was five years, and the intervening stipulations had reference to that period.

Under this theory, the interest on the bond in question should have been computed annually on all installments remaining unpaid from the date of the bond for five years, at the rate specified in the bond; after that time the annual interest to cease and the regular legal interest to attach upon the whole. Differing, as I do, in this construction from the Circuit judge who heard the case, and from the majority of this court, no doubt I am in error; but I have been unable to see the case as my brethren have. Hence this dissenting opinion.

Judgment affirmed.